People v Miller (2025 NY Slip Op 50907(U))

[*1]

People v Miller

2025 NY Slip Op 50907(U)

Decided on June 4, 2025

Supreme Court, Kings County

Cesare, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 4, 2025
Supreme Court, Kings County

The People of the State of New York,

against
Steven Miller, Defendant.

Ind. No. 71394-2024

For Defendant: Tasha N. Ricks, Esq.
For the People: Christopher Armetta, Esq.

Heidi C. Cesare, J.

Defendant moves pretrial to dismiss the indictment under Criminal Procedure Law § 30.30 on the ground that the district attorney did not comply with automatic discovery before declaring ready for trial. He argues that the district attorney was required to subpoena all the medical records of the complainant before filing a certificate of good faith discovery compliance (CoC). Defendant acknowledges that the district attorney timely disclosed medical records obtained by subpoena from one hospital but argues that CPL article 245 required the district attorney to ensure that the records received were complete and to subpoena other records from a second hospital. The motion is denied because the automatic discovery requirement does not require the district attorney to subpoena discoverable material in the control of a non-law enforcement third party when, as in this case, the defense may subpoena that material for itself.
This is the second defense motion to challenge the original CoC based on an alleged failure to subpoena and disclose all the complainant's medical records. Although the factual basis for that challenge remains the same, the first motion did not challenge the supplemental CoCs and statements of readiness for trial. This decision therefore reviews the full factual and procedural history of this case as relevant to decide the present motion.
I. Factual and Procedural Background
Defendant is charged with attempted murder, assault, attempted robbery, and other crimes for allegedly shooting the complainant in the chest during an attempted armed robbery on January 1, 2024. The complainant was seated in a vehicle during the attempted armed robbery, and the driver transported the victim to Interfaith Medical Center (IMC), a facility within the One Brooklyn Health System (OBH).
Medical records show that defendant was admitted to the emergency department at IMC at 8:25 a.m. and treated for a gunshot wound to the sternum. He was transferred from IMC to Brookdale University Hospital (BUH) at 12:42 p.m. He arrived at BUH at 3:01 p.m. and was [*2]admitted at 3:27 p.m. (see Medical Records Disclosure 3 at 161-162, 168, 170, 172).[FN1]
 Defendant was discharged from BUH on January 18, 2024 (id. at 161-164). He received follow-up treatment within the OBH System until at least May 23, 2024.
Police arrested defendant on February 29, 2024. On March 4, 2024, the assigned assistant asked a paralegal to subpoena the complainant's medical records from IMC for January 1, 2024, to the present. On March 6, 2024, the district attorney received medical records from IMC for follow-up medical treatment that the complainant received at the Bishop Walker Ambulatory Care (BWAC) clinic on January 24, 2024, and February 6, 2024. On March 6, 2024, a grand jury indicted defendant, and the indictment was filed two days later.
On July 2, 2024, the district attorney disclosed to the defense the IMC records that had been received by subpoena on March 6, 2024. During the interim, the district attorney did not subpoena the complainant's medical records from BUH. On July 9, 2024, the district attorney filed a CoC and statement of readiness for trial (see EDDS Doc ID: GH30WT).
On August 6, 2024, defense counsel emailed the assigned assistant to confer about discovery. Among the discovery complaints raised by defense counsel was that the BUH records were missing from the discovery. The assigned assistant promised to "look into it" (Ricks aff in supp of mot, exh B). On August 13, 2024, the district attorney sent a subpoena to BUH that requested all the medical records for the complainant from January 1, 2024, to the present.
On October 16, 2024, the district attorney disclosed to defendant the records received from OBH showing treatment at the BUH and the Brookdale Hospital Medical Center Fac Prac (BHMC FP) Crown Heights clinic by uploading them to a shared OneDrive folder (see id., exh C). These records, which were shared with this court, reflect treatment from January 10, 2024, through May 23, 2024. On the same day, the district attorney filed a supplemental CoC and statement of readiness for trial (see EDDS Doc ID: RD3ROM). On February 7, 2025, defense counsel acknowledged receipt of those records.
On March 11, 2025, this court spoke to the attorneys on the record, after having conducted a pretrial suppression hearing, about discovery of the complainant's medical records. The assigned assistant explained the efforts made to obtain those records and to share them electronically with defense counsel. The assigned assistant reported that "there was an issue about where those were in the One Drive" (Ricks aff in supp of mot, exh G, tr 122). Defense counsel also still sought "the medical records from January 1, 2024" (id., tr 118). This court directed the assigned assistant to subpoena the additional records sought by defendant and signed two so-ordered judicial subpoenas duces tecum for the district attorney to obtain medical records of the complainant's treatment at the BUH and IMC from January 1, 2024, to January 11, 2024 (id., tr 127).
On April 14, 2025, the district attorney served on defense counsel records received from OBH in response to the subpoena (see Medical Records Disclosure 3). The OBH records relate to the complainant's treatment at the IMC, the BUH, the BHMC FP Crown Heights clinic, and the BWAC clinic. On the same day, the district attorney filed a supplemental CoC and statement of readiness for trial (see EDDS Doc ID: LJGNXZ). The records, which were shared with this court, consist of 1698 pages and reflect treatment from January 1, 2024, to May 23, 2024.
Defense counsel currently alleges that the OBH records received on April 14, 2025, do not include records from IMC (Ricks aff in supp of mot at ¶ 20). The district attorney disputes that allegation (Armetta aff in opp to mot at ¶ 31). This court has inspected those records and finds that they contain records of the complainant's treatment at the IMC emergency department on January 1, 2024. The records include chief complaint, visit diagnosis, hospital problems, visit information, visit account information, events, nurse's notes, doctor's notes, physical exam notes, assessment, and other information (see Medical Records Disclosure 3 at 161-162, 166, 168-174). Consequently, this court finds that defendant has now received the complete set of medical records for complainant's treatment at IMC and the BUH from January 1, 2024, to January 18, 2024, and for follow-up medical appointments through May 23, 2024, at the BHMC FP Crown Heights clinic and the BWAC clinic.
II. Discussion
Under New York's speedy trial statute, the district attorney must be ready for trial within six months of when the felony complaint was filed on March 2, 2024 (see CPL 1.20 [8], [16], [17]; 30.30 [1] [a]; 100.05; People v Osgood, 52 NY2d 37, 50 [1980]). The applicable six-month period, as measured by the number of days in the six calendar months after the felony complaint was filed, is 184 days (see People v Cortes, 80 NY2d 201, 207 n 3 [1992]; People v Bernier, 141 AD2d 750, 754 [2d Dept 1988]).
The speedy trial requirement is now "tethered" to the district attorney's obligation to provide automatic discovery under CPL article 245 (People v Bay, 41 NY3d 200, 209 [2023]). In the absence of "an individualized finding of special circumstances," the district attorney "shall not be deemed ready for trial" under Criminal Procedure Law § 30.30 unless the district attorney has completed automatic discovery and filed a proper certificate of good faith discovery compliance (CPL 245.50 [3]). A statement of readiness for trial not "accompanied or preceded" by a proper certificate of compliance (CPL 30.30 [5]) must be "stricken as illusory" (People v Bay, 41 NY3d at 213). An illusory statement of readiness for trial is "insufficient to stop the running of the speedy trial clock" (People v England, 84 NY2d 1, 4 [1994]). The district attorney "bear[s] the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" (People v Bay, 40 NY3d at 213 [cleaned up]; see People v Serrano, 234 AD3d 879, 882 [2d Dept 2025]).
A. Discovery of Medical Records
CPL article 245 requires automatic discovery in criminal cases. Under subdivision one of Criminal Procedure Law § 245.20, the district attorney must automatically disclose to a defendant "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." The statute requires automatic discovery of medical reports "relating to the criminal action or proceeding . . . which were made by a person whom the prosecutor intends to call as a witness at trial . . . or which the prosecution intends to introduce at trial" (CPL 245.20 [1] [j]). For the purposes of subdivision one, "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20 [2]).
To satisfy the automatic discovery requirement, the district attorney must "make a [*3]diligent, good faith effort to ascertain the existence of material or information discoverable under subdivision one . . . and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control; provided that the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain" (id.)
After satisfying this discovery obligation, except for discovery that is lost or destroyed (CPL 245.80) or subject to an order pursuant to Criminal Procedure Law § 245.70, the district attorney must file a certificate of good faith discovery compliance (CPL 245.50 [1]). The certificate must identify the discovery that was provided, and state "that, after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (id.).
The district attorney complied with the automatic discovery statute. The district attorney's duty to disclose medical records that are related to the subject matter of this case or that the district attorney intends to put into evidence at trial is defined by statute. The district attorney must provide such records when they are in the possession, custody, or control of the district attorney (see CPL 245.20 [1]). The district attorney satisfied that requirement by disclosing the medical records received from IMC pursuant to the subpoena issued on March 4, 2024. These were the only medical records of the complainant possessed by the district attorney when the original CoC was filed on July 9, 2024.
Defendant argues that the discovery statute also required the district attorney to exercise due diligence to ascertain what other medical records existed and to make them available to the defense before filing a CoC and declaring ready for trial (see CPL 245.20 [2]). But this requirement is limited by the language stating that the district attorney is not required to obtain such material or information "with use of a subpoena duces tecum where the defense is able to obtain the same material with the use of a subpoena duces tecum" (id.; see People v Henderson 237 AD3d 853, ___ [2d Dept 2025]). This limitation absolved the district attorney of subpoenaing all the complainant's medical records and disclosing them to the defense before certifying discovery compliance and announcing ready for trial.
Defendant's ability to subpoena the discoverable medical records of the complainant stems from the long-standing right of a defendant to subpoena discoverable material in the possession of a third party. This right existed under the former Criminal Procedure Law § 240.20 (2), which stated:
"The prosecutor shall make a diligent, good faith effort to ascertain the existence of demanded property and to cause such property to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control; provided, that the prosecutor shall not be required to obtain by subpoena duces tecum demanded material which the defendant may thereby obtain."
(L 1979, ch 412, § 1). Under this statute, a court could issue a subpoena duces tecum for the defense for discovery purposes "after it has been determined that (a) the material is discoverable and (b) that the material is not in the possession of the prosecutor" (People v Ramirez, 129 Misc [*4]2d 112, 113 [Sup Ct, Bronx County 1985]).[FN2]
This language was incorporated into the current version of subdivision two of Criminal Procedure Law § 245.20, and it grants defendant the right to subpoena the medical records of the complainant that are discoverable and not within the possession, custody, or control of the district attorney. A defense subpoena to obtain such records would not violate the rule that prohibits the defense from using the subpoena power to circumvent the rules for discovery established by the Legislature (see People v Funchess, 284 AD2d 478, 478 [2d Dept 2001] ["The subpoena process is not to be used to circumvent the discovery rules set forth in CPL article 240"]). The district attorney was, therefore, not required to subpoena those records to comply with automatic discovery and declare ready for trial.
Defendant suggests that he cannot subpoena the medical records because they are protected from disclosure under the Health Insurance Portability and Accountability Act (HIPAA) (Pub L 104-191, 110 US Stat 1936) and cannot be released without a HIPAA waiver release form signed by the complainant. He cites People v Hernandez (80 Misc 3d 1035, 1040 [Crim Ct, Bronx County 2023]), which concluded that the defense could not be expected to subpoena the discoverable medical records of the complainant because the "defendant was unlikely to obtain a HIPAA authorization from the person she allegedly assaulted." But HIPAA allows for release of medical records without authorization from the patient in certain instances, such as in response to a court order, including a so-ordered judicial subpoena (see 45 CFR 164.512 [e] [1] [i]; People v Marrero, 71 Misc 3d 1078, 1081 [Sup Ct, NY County 2021]). The HIPAA statute does not prevent defendant from using a so-ordered judicial subpoena deuces tecum to obtain discoverable medical records of the complainant.
Defendant alternatively argues that the district attorney had to exercise due diligence to ensure that any records obtained by subpoena were complete, even if the district attorney was not required to subpoena them in the first place. This argument, however, contravenes the discovery statute, which allows the district attorney to certify discovery compliance and declare ready for trial without having to subpoena discoverable items not in the possession, custody, or control of the district attorney when the defense may obtain those items by a subpoena duces tecum. The discovery statute does not require this court to evaluate the diligence of the district attorney's effort to provide defendant with more discovery than the law requires. Accordingly, defendant's arguments that the assigned assistant did not diligently subpoena the complainant's medical records—that the assigned assistant had reason to know that the complainant was treated at BUH and should have subpoenaed those records earlier and verified that all records received by subpoena were complete before disclosing them—have no bearing on the validity of the district attorney's declared readiness for trial.
Defendant alleges that two courts denied his applications for so-ordered judicial subpoenas duces tecum to obtain the complainant's medical records from IMC and BUH. He presented the subpoenas to the miscellaneous motions judge on March 7, 2025, but the judge did [*5]not sign them. The motion papers are silent about what reason, if any, the judge gave for not signing either subpoena. Defendant presented the same subpoenas to this court four days later. This court did not sign them either, because they were overbroad. For example, the subpoenas sought records from January 1, 2024, to the present, even though the district attorney had already provided defendant with more than 1700 pages of medical records that fell within that date period. In addition, defendant has not demonstrated how any outpatient follow-up treatment is related to the subject matter of this case. The subpoenas also improperly sought records for alcohol and drug treatment, and HIV-related information. Defendant has not shown that any of those records are related to the subject matter of this case. The denial of those subpoena applications does not support any conclusion that defendant could not obtain the complainant's hospital medical records by subpoena. For all the reasons stated above, the defense challenges to the CoC and supplemental CoCs are denied, and the statement of trial readiness filed on July 9, 2024, is deemed valid.
B. Speedy Trial Time Computation
To determine whether the district attorney was ready for trial within the applicable six-month period, this court must compute the number of days that elapsed between the start of the criminal action and the statement of readiness, subtract any statutorily excludable periods of delay, and add "any postreadiness periods of delay that are actually attributable to the People and are ineligible for an exclusion" (People v Cortes, 80 NY2d at 208). If the district attorney was not ready within the applicable six-month period, the indictment must be dismissed upon motion of the defendant (see CPL 210.20 [1] [g]; 30.30 [1] [d]; People v Price, 14 NY3d 61, 63 [2010]).
When moving to dismiss the indictment based upon a statutory speedy trial violation, a defendant must initially allege that the district attorney was not ready within the applicable period (see People v Goode, 87 NY2d 1045, 1047 [1996]; People v Luperon, 85 NY2d 71, 77-78 [1995]; People v Ryan, —AD3d —, 2025 NY Slip Op 01954, *2 [2d Dept 2025]). The burden then shifts to the district attorney to prove "that certain periods within that time should be excluded" (People v Berkowitz, 50 NY2d 333, 349 [1980]; see People v Brown, 28 NY3d 392, 403 [2016]). The defendant must then "identify the specific legal and factual impediments to those exclusions" (People v Beasley, 16 NY3d 289, 292 [2011]). This court may decide the motion summarily if the motion papers do not raise a dispute about a material fact that must be resolved at a hearing (see People v Allard, 28 NY3d 41, 45-46 [2016]; People v Gruden, 42 NY2d 214, 215 [1977]). 
The district attorney is charged with the delay between the start of the case in Criminal Court on March 2, 2024, and the arraignment on the indictment in Supreme Court on March 25, 2024 (see People v Cortes, 80 NY2d at 213 & n 5; People v Correa, 77 NY2d 930, 931 [1991]; People v Lisene, 201 AD3d 738, 740 [2d Dept 2022]; People v Owens, 209 AD2d 549, 550 [2d Dept 1994]). (23 days charged.)
At the supreme court arraignment on March 25, 2024, defense counsel requested inspection of the grand jury minutes. The court adjourned to April 26, 2024, for decision on the defense request and the district attorney to provide discovery. This adjournment is excludable under Criminal Procedure Law § 30.30 (4) (a). (0 days charged. 23 total days charged.)
On April 26, 2024, the court did not issue a decision on the defense motion because the district attorney "handed up" the grand jury minutes at the calendar call. The court returned the minutes and instructed the district attorney to share them electronically. The court adjourned to June 18, 2024, for the district attorney to file a CoC.
The court's bench notes reflect that this adjournment was to be charged to the district attorney, but the time that the motion is under consideration by the court is excludable by statute (id.; see People v Moorhead, 61 NY2d 851, 852 [1984]; People v Lopez, 49 AD3d 899, 899 [2d Dept 2008]). Here, internal court email records reveal that the grand jury minutes were shared electronically with the court on April 26, 2024, and that the video exhibits were not disclosed in a format that could be viewed by the court until May 3, 2024. The district attorney is, therefore, charged with the time between April 26, 2024, the date of the calendar call, and May 3, 2024, the date when the district attorney provided the court with a viewable copy of the video exhibits, at which point the motion is deemed to be under consideration by the court. (7 days charged. 30 total days charged.)
On June 18, 2024, the court ruled on the defense motion to inspect the grand jury minutes by issuing a written decision and an amended written decision. The court adjourned to June 26, 2024, in Part 21, for the district attorney to file a CoC. This time is charged to the district attorney. (8 days charged. 38 total days charged.)
On June 26, 2024, this court adjourned to July 31, 2024, for the district attorney to file a CoC.
Off calendar on July 5, 2024, the district attorney moved for a protective order to restrict discovery of certain material to the defense. The filing of the motion stopped the speedy trial clock (see CPL 30.30 [4] [a]).
As noted already, off calendar on July 9, 2024, the district attorney filed a CoC and statement of readiness for trial.
The district attorney is charged with the first nine days of this adjournment period. (9 days charged. 47 total days charged.)
On July 31, 2024, this court granted defendant's request for time to respond to the district attorney's motion for a protective order and adjourned to August 14, 2024, for decision on the motion. This time is excludable (see CPL 30.30 [4] [a], [b]). (0 days charged. 47 total days charged.)
Off calendar on August 13, 2024, this court issued a decision on the motion for a protective order.
On August 14, 2024, this court adjourned to September 25, 2024, for the defense to file any motion to challenge the CoC. On August 23, 2024, defendant filed a motion to challenge the CoC. On September 5, 2024, the district attorney answered the defense motion. Prior to the next court date, defense counsel requested time to file a reply. This delay is excludable under Criminal Procedure Law § 30.30 (4) (a). (0 days charged. 47 total days charged.)
On September 25, 2024, this court set a date for the defense to file a reply and adjourned to October 30, 2024, for a decision on the defense motion. Defendant filed a reply on October 7, 2024. This adjournment is excludable (see id.). (0 days charged. 47 total days charged.)
Off calendar, on October 21, 2024, this court issued a decision that denied the defense motion to challenge the original CoC.
On October 30, 2024, this court deemed the CoC filed on July 9, 2024, to be valid. Defense counsel requested time to review the BUH records disclosed by the district attorney on October 16, 2024. This court adjourned for that purpose to December 11, 2024. This time is excludable (see CPL 30.30 [4] [b]). (0 days charged. 47 total days charged.)
On December 11, 2024, this court adjourned to January 28, 2025, to conduct the pretrial suppression hearing requested by defendant. This time is excluded (see CPL 30.30 [4] [a]; [*6]People v Rene, 292 AD2d 302, 303 [1st Dept 2002]). (0 days charged. 47 total days charged.)
On January 28, 2025, defense counsel was ill and did not appear. The defense attorney covering for the assigned defense attorney requested an adjournment to February 5, 2025. This delay is excludable (see CPL 30.30 [4] [b]). (0 days charged. 47 total days charged.)
On February 5, 2025, the district attorney was not ready for the hearing. The witnesses for the district attorney had childcare issues. The case was adjourned to March 11, 2025, for the pretrial suppression hearing. This post-readiness delay was caused by the district attorney and must be charged to the district attorney (see People v Boumoussa, 104 AD3d 863, 863 [2d Dept 2013]). (34 days charged. 81 total days charged.)
On March 11, 2025, this court conducted and completed the pretrial suppression hearing. This court then sought to pick a date for jury selection (tr 111). Defense counsel inquired about "how long is it going to take to get the medical records from January 1, 2024?" (id. at 118). As noted previously in this decision, this court spoke to the attorneys about the disclosure of the medical records and signed two so-ordered judicial subpoenas for the district attorney to obtain additional medical records (see id. at 123-130). Instead of adjourning for jury selection, this court adjourned for a status conference and to select a date for jury selection if the defense were to receive the medical records by that date (id. at 135). This court proposed a two-week adjournment, but defense counsel stated, "No" (id.). Defense counsel explained that more time would be needed "to review" the records (id.). This court informed defense counsel that the defense would receive additional time to review them if needed (id.). This court proposed a two-week adjournment for a "discovery status conference," and then adjourned to April 2, 2025, the date proposed by defense counsel (id. at 136). This delay is excludable as an adjournment granted at defendant's request (see CPL 30.30 [4] [b]). (0 days charged. 81 total days charged.)
At the status conference on April 2, 2025, the district attorney reported that paralegals continued to work on obtaining the outstanding medical records. Defendant requested that the case be adjourned for a status conference. The court adjourned to April 16, 2025, for that purpose. The delay caused by this adjournment granted at the request of defendant is excludable (see id.; People v Lee, 217 AD2d 637, 638 [2d Dept 1995]). (0 days charged. 81 total days charged.)
On April 16, 2025, defense counsel reported that she had not reviewed the medical records that the district attorney had disclosed two days earlier. Defense counsel stated that the defense would be moving to dismiss the indictment. This court set a motion schedule and adjourned to June 4, 2025, for decision on the motion. This delay is excludable (see CPL 30.30 [4] [a]; People v Williams, 229 AD2d 603, 604 [2d Dept 1996] [excluding as motion practice delay one month given to defense counsel to prepare a speedy trial motion]). (0 days charged. 81 total days charged.) Because the total number of charged days is fewer than the number within the applicable six-month period, the motion to dismiss the indictment is denied.
III. Conclusion
For the foregoing reasons, this court finds that defendant has not established that the district attorney failed to comply with Criminal Procedure Law § 245.20 (1) and that the number of chargeable speedy trial days is 81, which is fewer than the number within the applicable six-month period of trial readiness for this case. Accordingly, the motions to challenge the original CoC and the supplemental CoCs, and to dismiss the indictment are denied.
So ordered.
Dated: June 4, 2025
Brooklyn, NY
HEIDI C. CESARE, A.J.S.C.

Footnotes

Footnote 1:Medical Records Disclosure 3 refers to the medical records listed on the supplemental CoC and inventory dated April 14, 2024 (see EDDS Doc ID: LJGNXZ).

Footnote 2:The language of subdivision two remained unchanged until repealed by L 2019, ch 59, § 1 (Part LLL), eff January 1, 2020. The Legislature amended Criminal Procedure Law § 240.20 five times during the 1980's (see L 1982, ch 558, §§ 4,5; L 1983, ch 317, § 1; L 1984, ch 795, § 3; L 1986, ch 514, § 8; L 1989, ch 536, § 1; New York Criminal Statues and Rules, CPL-242, History of Legislative Amendments [2020 Graybook] [Matthew Bender]), but none of them amended subdivision two of Criminal Procedure Law § 240.20.